IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

STACEY BENNETT
MOSHA BENNETT

PLAINTIFF,

  -versus-

THE CITY OF NEW YORK, a municipal entity,
NEW YORK CITY POLICE DETECTIVE CARLOS
LOZADA, NEW YORK CITY POLICE DETECTIVE
ROLANDO CARBONELL, NEW YORK CITY
POLICE DETECTIVE NOELLE CUNNINGHAM,
NEW YORK CITY POLICE SERGEANT SEAN
LYNCH, NEW YORK CITY POLICE OFFICERS
"JOHN DOES and JANE DOES 1-3,"

DEFENDANTS.

─────────────────────────────────────

INDEX NO. 13cv2544(PAE)
ECF CASE

FIRST AMENDED
COMPLAINT
[JURY TRIAL
DEMANDED]

1. Plaintiffs STACEY BENNETT and MOSHA BENNETT, by their attorneys, STECKLOW, COHEN AND THOMPSON, complaining of the defendants, respectfully allege as follows:

## **PRELMINARY STATEMENT**

2. Plaintiffs STACEY BENNETT and MOSHA BENNETT bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

On the early morning of Thursday, June 9, 2011 at or around 6:30 AM, Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, were together in Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence when NEW YORK CITY POLICE DETECTIVE CARLOS LOZADA, NEW YORK CITY POLICE DETECTIVE ROLANDO CARBONELL, NEW YORK CITY POLICE DETECTIVE NOELLE CUNNINGHAM, NEW YORK CITY POLICE SERGEANT SEAN LYNCH, and NEW YORK CITY POLICE OFFICERS "JOHN DOES and JANE DOES 1-3," (collectively, "Defendant POLICE OFFICERS,"  individually, "Defendant "POLICE OFFICER,") dismantled the lock to the front door of Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence by way of a hand-drill, and rammed open said

front door to Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence.

3.  Though Plaintiffs STACEY BENNETT and MOSHA BENNETT were not exhibiting any suspicious behavior or engaging in any illegal acts, were not in possession of any illegal contraband or weapons, one or more Defendant POLICE OFFICERS shoved Plaintiff STACEY BENNETT to the ground, unlawfully and illegally subjected Plaintiff MOSHA BENNETT to a demeaning and invasive cavity search, and searched Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence for illegal narcotics in an excessively destructive manner, intimidatingly and menacingly threatened Plaintiffs STACEY BENNETT and MOSHA BENNETT, unlawfully and illegally arrested Plaintiffs STACEY BENNETT and MOSHA BENNETT, and unlawfully and illegally confined Plaintiffs STACEY BENNETT and MOSHA BENNETT in an unmarked police van for approximately two (2) hours before releasing Plaintiffs STACEY BENNETT and MOSHA BENNETT without filing any charges.

4.  As a result of the above constitutionally impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT were caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to their reputations and standing within their community.   Accordingly, Plaintiffs STACEY BENNETT and MOSHA BENNETT bring this action in a quest for answers as to why they were punitively arrested without probable cause, brutally beaten, detained at length, and subjected to prosecution in the absence of criminal conduct.

5.  In compliance with the United States District Court for the Southern District of New York's "PLAN FOR CERTAIN § 1983 CASES AGAINST THE CITY OF NEW YORK," CPL §160.50 releases for Plaintiffs were served with the initial Complaint in this action to Defendant CITY OF NEW YORK.

## JURISDICTION

6.  This action is brought pursuant to 42 U.S.C.§§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.   Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

7.  Plaintiffs STACEY BENNETT and MOSHA BENNETT further invoke this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE

8.  Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district.

## JURY DEMAND

9.  Plaintiffs STACEY BENNETT and MOSHA BENNETT respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

10. At all times pertinent to this complaint, Plaintiffs STACEY BENNETT and MOSHA BENNETT are and were residents of the City of New York, State of New York, and the County of Bronx.

11. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

12. Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

13. That at all times hereinafter mentioned, the Defendant Police Officers NEW YORK CITY POLICE DETECTIVE CARLOS LOZADA, NEW YORK CITY POLICE DETECTIVE ROLANDO CARBONELL, NEW YORK CITY POLICE DETECTIVE NOELLE CUNNINGHAM, NEW YORK CITY POLICE SERGEANT SEAN LYNCH, and NEW YORK CITY POLICE OFFICERS "JOHN DOES and JANE DOES 1-3," (collectively, "Defendant POLICE OFFICERS," individually, "Defendant "POLICE OFFICER,") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

14. The identities of the remaining Defendant "John Doe" and "Jane Doe" POLICE OFFICERS at issue here are unknown to Plaintiffs STACEY BENNETT and MOSHA BENNETT at this time.

15. Plaintiffs STACEY BENNETT and MOSHA BENNETT will further amend this complaint to name the remaining Defendant "John Doe" and "Jane Doe" POLICE OFFICERS as their identities become available to Plaintiffs STACEY BENNETT and MOSHA BENNETT.

16. That at all times hereinafter mentioned the Defendant POLICE OFFICERS were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

17. Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK.

18. Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## **FACTS COMMON TO ALL CLAIMS**

6. Plaintiff STACEY BENNETT is a female American citizen in her forties who resides in the Bronx, New York.

7. Plaintiff MOSHA BENNETT is a female American citizen in her twenties who resides in the Bronx, New York.

8. Plaintiff STACEY BENNETT is the mother of Plaintiff MOSHA BENNETT.

9. Plaintiffs STACEY BENNETT and MOSHA BENNETT reside together in the Bronx, New York.

10. Plaintiffs STACEY BENNETT and MOSHA BENNETT reside in an apartment building with several apartments on each floor sharing a common hallway.

11. Plaintiff STACEY BENNETT is an African-American who presents as black.

12. Plaintiff MOSHA BENNETT is an African-American who presents as black.

13. The events herein described began at or around 6:30 AM on June 9, 2011 in the Bronx, New York.

14. On the early morning of June 9, 2011, Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, were together in Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence located at 2511 Cruger Avenue in the Bronx, New York.

15. While in her residence, Plaintiff STACEY BENNETT was not exhibiting any suspicious behavior or engaging in any illegal acts.

16. While in her residence, Plaintiff MOSHA BENNETT was not exhibiting any suspicious behavior or engaging in any illegal acts.

17. While in Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence, Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends were not exhibiting any suspicious behavior or engaging in any illegal acts.

18. While in her residence, Plaintiff STACEY BENNETT was not in possession of any illegal narcotics or other illegal substances.

19. While in her residence, Plaintiff MOSHA BENNETT was not in possession of any illegal narcotics or other illegal substances.

20. While in Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S residence, Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends were not in possession of any illegal narcotics or other illegal substances.

21. Upon information and belief, on the early morning of June 9, 2011, there were no illegal narcotics or other illegal substances located in Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence.

22. Upon information and belief, there have never been any illegal narcotics or other illegal substances located in Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence.

23. On the early morning of June 9, 2011, at approximately 6:30 AM, Plaintiff STACEY BENNETT was startled by a drilling noise emanating from the front door to her residence.

24. Upon hearing a drilling noise emanating from the front door to her residence, Plaintiff STACEY BENNETT approached said front door.

25. Upon hearing a drilling noise emanating from the front door to her residence, Plaintiff STACEY BENNETT approached said front door seeking to determine the source of the drilling noise.

26. Upon further inspection, Plaintiff STACEY BENNETT determined that someone was attempting to dismantle the lock to her front door by way of a hand-drill.

27. Plaintiff STACEY BENNETT became alarmed upon determining that someone was attempting to dismantle the lock to her front door.

28. Upon information and belief, Plaintiff STACEY BENNETT was not aware that the individuals attempting to gain access to her and her daughter's, Plaintiff MOSHA BENNETT'S, shared residence were Police Officers acting in their official capacity.

29. Upon information and belief, Plaintiff STACEY BENNETT believed the dismantling of the lock to her front door to be caused by individuals attempting to break into her and her daughter's, Plaintiff MOSHA BENNETT'S, shared residence.

30. Upon information and belief, Plaintiff STACEY BENNETT believed herself, her daughter -- Plaintiff MOSHA BENNETT -- and their boyfriends to be in immediate danger.

31. Upon dismantling the lock to the front door of Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence by way of a hand-drill, Defendant POLICE

OFFICERS rammed open the front door to Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence.

32. Plaintiff STACEY BENNETT suffered terror, humiliation, and mental anguish as a result of the intimidating and threatening act of Defendant POLICE OFFICERS.

33. Though Plaintiff STACEY BENNETT was not exhibiting any suspicious behavior or engaging in any illegal acts, one or more Defendant "John Doe" and "Jane Doe" POLICE OFFICERs dressed in full riot gear screamed at Plaintiff STACEY BENNETT to get on the floor.

34. The intimidating and threatening act of one or more Defendant "John Doe" and "Jane Doe" POLICE OFFICERS screaming at Plaintiff STACEY BENNETT to get on the floor caused Plaintiff STACEY BENNETT extreme terror and anguish.

35. Though Plaintiff STACEY BENNETT was not exhibiting any suspicious behavior or engaging in any illegal acts, the same Defendant POLICE OFFICERS shoved Plaintiff STACEY BENNETT to the ground.

36. Plaintiff STACEY BENNETT fell several feet through the void door frame and impacted the floor in the hallway immediately outside her residence.

37. Plaintiff STACEY BENNETT suffered pain and injuries as a result of being slammed to the floor in the hallway immediately outside her residence by Defendant "John Doe" POLICE OFFICER.

38. The force with which Plaintiff STACEY BENNETT was thrown to the ground by the Defendant POLICE OFFICER caused Plaintiff STACEY BENNETT to involuntarily urinate in her clothes, while lying on the floor immediately outside of her apartment.

39. Plaintiff STACEY BENNETT was embarrassed, terrified and humiliated.

40. Upon information and belief, one or more Defendant POLICE OFFICERS knew or should have known that excessive force was being employed against Plaintiff STACEY BENNETT by one or more Defendant POLICE OFFICERS.

41. Upon information and belief, none of the Defendant POLICE OFFICERS intervened to prevent excessive force from being employed against Plaintiff STACEY BENNETT by one or more Defendant POLICE OFFICERS despite having had a realistic opportunity to do so.

42. One or more Defendant  POLICE OFFICERS placed Plaintiff STACEY BENNETT in handcuffs.

43. Plaintiff STACEY BENNETT did not resist police efforts to place her in handcuffs.

44. While sprawled on the hallway floor handcuffed, one or more Defendant POLICE OFFICERS began cursing and swearing at Plaintiff STACEY BENNETT.

45. One or more Defendant POLICE OFFICERS then pulled Plaintiff STACEY BENNETT up off the hallway floor.

46. One or more Defendant POLICE OFFICERS then dragged Plaintiff STACEY BENNETT several feet back into her residence.

47. One or more Defendant POLICE OFFICERS then inquired as to whether there were any other individuals present in Plaintiff STACEY BENNETT'S residence.

48. In response to one or more Defendant POLICE OFFICERS' inquiry, Plaintiff STACEY BENNETT indicated that her daughter, Plaintiff MOSHA BENNETT, and their boyfriends were present in Plaintiff STACEY BENNETT'S residence.

49. At this point, Plaintiff MOSHA BENNETT, who was present in the rear of the residence, was able to hear the commotion emanating from the front of the residence.

50. At this point, Plaintiff MOSHA BENNETT, who was present in the rear of the residence, heard the commotion emanating from the front of the residence.

51. At this point, both Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends, who were present in the rear of the residence, heard the commotion emanating from the front of the residence.

52. Plaintiff MOSHA BENNETT became startled by the commotion emanating from the front of the residence.

53. Both Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends became startled by the commotion emanating from the front of the residence

54. One or more Defendant POLICE OFFICERS burst into Plaintiff MOSHA BENNETT's bedroom with guns drawn.

55. Plaintiff MOSHA BENNETT and her boyfriend were terrified.

56. Though Plaintiff MOSHA BENNETT was not exhibiting any suspicious behavior or engaging in any illegal acts, one or more Defendant POLICE OFFICERS began screaming at Plaintiff MOSHA BENNETT to "get the fuck down."

57. One or more Defendant POLICE OFFICERS placed Plaintiff MOSHA BENNETT in handcuffs.

58. Plaintiff MOSHA BENNETT did not resist police efforts to place her in handcuffs.

59. In the course of restraining Plaintiff MOSHA BENNETT, or directly before or thereafter, one or more Defendant POLICE OFFICERS unlawfully and illegally placed Plaintiff MOSHA BENNETT under arrest without probable cause to do so.

60. While handcuffed, Plaintiff STACEY BENNETT was placed on her living-room couch.

61. While handcuffed, Plaintiff MOSHA BENNETT was placed on her living-room couch.

62. With Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, placed handcuffed on the living-room couch, one or more Defendant POLICE OFFICERS stated in sum and substance, "We're here, where are the drugs?"

63. Plaintiffs protested that they were not in possession of any illegal drugs.

64. With Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, placed handcuffed on the living-room couch, one or more Defendant POLICE OFFICERS stated in sum and substance, "We can make this very easy, tell us where the drugs are and we won't tell section eight (8)."

65. With Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, placed handcuffed on the living-room couch, one or more Defendant POLICE OFFICERS stated in sum and substance, "Tell us where the drugs are or we will take your dog away."

66. With Plaintiffs STACEY BENNETT and MOSHA BENNETT, and both of their boyfriends, placed handcuffed on the living-room couch, one or more Defendant POLICE OFFICERS stated in sum and substance, "We will get a police narcotic-sniffing dog that will eat your dog if you don't tell us where the drugs are."

67. With Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, placed handcuffed on the living-room couch, one or more Defendant POLICE OFFICERS stated in sum and substance, "This is a very nice house, but we will fuck it up if you don't tell us where the drugs are."

68. Seeing that Plaintiff MOSHA BENNETT was younger than her boyfriend, a Defendant POLICE OFFICER stated in sum and substance that "If you were my daughter, I would break your legs."

69. The intimidating and threatening statements by the Defendant POLICE OFFICERS Plaintiffs STACEY BENNETT and MOSHA BENNETT extreme terror and anguish.

70. Frustrated that their threats did not yield any illegal narcotics, one or more Defendant POLICE OFFICERS conducted a knowingly excessively destructive search of Plaintiffs STACEY BENNETT and MOSHA BENNETT'S shared residence for illegal narcotics.

71. The knowingly excessively destructive search of Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence by one or more Defendant POLICE OFFICERS revealed no illegal narcotics, weapons, or contraband of any kind.

72. In the course the Defendant POLICE OFFICERS' search of Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence, one or more Defendant POLICE OFFICERS broke Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S flat screen television.

73. In the course the Defendant POLICE OFFICERS' search of Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence, one or more Defendant POLICE OFFICERS unreasonably damaged and destroyed property in Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence.

74. As a result of the Defendant POLICE OFFICERS' excessively destructive search of Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S shared residence, Plaintiffs STACEY BENNETT and MOSHA BENNETT were later forced to clean their residence for approximately seven (7) hours to return it to the state it was in prior to the police intrusion.

75. Upon completion of the unlawful and illegal search of Plaintiffs STACEY BENNETT AND MOSHA BENNETT's shared residence, a female Defendant POLICE OFFICER took Plaintiff STACEY BENNETT to Plaintiff STACEY BENNETT's bedroom.

76. Once inside her bedroom, the same female Defendant POLICE OFFICER instructed Plaintiff STACEY BENNETT to pull down her pants.

77. Once inside her bedroom, and with her pants pulled down, the same female Defendant POLICE OFFICER instructed Plaintiff STACEY BENNETT to squat and spread open her legs.

78. The demeaning, invasive, and illegal cavity search of Plaintiff STACEY BENNETT by a female Defendant POLICE OFFICER revealed no narcotics, weapons, or contraband of any kind.

79. The demeaning, invasive, and illegal cavity search of Plaintiff STACEY BENNETT by a female Defendant POLICE OFFICER Plaintiff STACEY BENNETT extreme terror and anguish.

80. Thereafter, the female Defendant POLICE OFFICER observed Plaintiff STACEY BENNETT as she changed into clean clothes and cleaned herself in the bathroom of her home.

81. Upon completion of the search of Plaintiffs STACEY BENNETT'S AND MOSHA BENNETT'S shared residence, a female Defendant POLICE OFFICER took Plaintiff MOSHA BENNETT to Plaintiff MOSHA BENNETT'S bedroom.

82. Once inside her bedroom, the same female Defendant POLICE OFFICER instructed Plaintiff MOSHA BENNETT to pull down her pants.

83. Once inside her bedroom, and with her pants pulled down, the same female Defendant POLICE OFFICER instructed Plaintiff MOSHA BENNETT to squat and spread open her legs.

84. The demeaning, invasive, and illegal cavity search of Plaintiff MOSHA BENNETT by the female Defendant POLICE OFFICER revealed no narcotics, weapons, or contraband of any kind.

85. The demeaning, invasive, and illegal cavity search of Plaintiff MOSHA BENNETT by the female Defendant POLICE OFFICER caused Plaintiff MOSHA BENNETT extreme terror and anguish.

86. Plaintiff MOSHA BENNETT was then allowed by the female Defendant POLICE OFFICER to change from her pajamas into clothing.

87. The female Defendant POLICE OFFICER confiscated Plaintiff MOSHA BENNETT'S shoe-laces.

88. Upon changing into clean clothing, the same female Defendant POLICE OFFICER took Plaintiff MOSHA BENNETT back to the living-room of the residence.

89. Even though they had failed to yield any illegal narcotics, one or more Defendant POLICE OFFICERS started to take Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, in handcuffs outside of the apartment building where Plaintiffs STACEY BENNETT and MOSHA BENNETT reside.

90. As Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, were being taken outside of the apartment building where Plaintiffs STACEY BENNETT and MOSHA BENNETT reside, Plaintiff MOSHA BENNETT inquired as to where she was being taken.

91. In response to Plaintiff MOSHA BENNETT'S inquiry, one or more Defendant POLICE OFFICERS indicated that Plaintiff MOSHA BENNETT was going to jail.

92. Plaintiff MOSHA BENNETT then inquired as to why she was being taken to jail.

93. In response to Plaintiff MOSHA BENNETT'S inquiry, one or more Defendant "POLICE OFFICERS indicated that Plaintiff MOSHA BENNETT was being charged with the attempted sale of illegal narcotics.

94. Upon information and belief, Plaintiff MOSHA BENNETT has never sold or attempted to sell illegal narcotics.

95. Upon information and belief, Plaintiff STACEY BENNETT has never sold or attempted to sell illegal narcotics.

96. Upon information and belief, Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends have never sold or attempted to sell illegal narcotics.

97. Plaintiff STACEY BENNETT was taken outside of the apartment building where she resides in handcuffs and in full view of her neighbors.

98. Plaintiff MOSHA BENNETT was taken outside of the apartment building where she resides in handcuffs and in full view of her neighbors.

99. Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends were taken outside of the apartment building where Plaintiffs STACEY BENNETT and MOSHA BENNETT reside in handcuffs and in full view of the neighbors.

100.    Having been taken outside of the apartment building where they reside in handcuffs and in full view of their neighbors, Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S neighbors began inquiring as to why Plaintiffs STACEY BENNETT and MIOSHA BENNETT, and their boyfriends, were being arrested.

101.    With their hands handcuffed, Plaintiffs were unlawfully and illegally placed in an unmarked police van by one or more Defendant POLICE OFFICERS without probable cause to do so.

102.    Upon entering the unmarked police van, Plaintiffs found the unmarked police van to be crowded with several handcuffed tenants from a nearby apartment building already being detained in the unmarked police van.

103.     With her hands handcuffed, Plaintiffs were unlawfully and illegally confined by one or more Defendant POLICE OFFICERS in the crowded unmarked police van for approximately two (2) hours without probable cause to do so.

104.     Upon information and belief, the temperature inside the crowded unmarked police van was extremely hot and uncomfortable.

105.     After approximately two (2) hours in the police van, one or more Defendant "John Doe" and "Jane Doe" POLICE OFFICERS removed Plaintiff STACEY BENNETT from the police van.

106.     On information and belief, the police van had not moved in that time.

107.     Once outside the crowded unmarked police van, one or more Defendant POLICE OFFICERS once again inquired in sum and substance, "Stacey, where did you put the drugs?  Just tell us where you put it."

108.     In response to one or more Defendant POLICE OFFICERS' inquiry, Plaintiff STACEY BENNETT indicated that the only drugs in her residence were lawfully possessed prescription medications.

109.     Frustrated that the inquiry yielded no illegal narcotics, one or more Defendant POLICE OFFICERS placed Plaintiff STACEY BENNETT back into the crowded unmarked police van.

110.     With Plaintiff STACEY BENNETT rejoining Plaintiff MOSHA BENNETT, their boyfriends, and the several tenants from a nearby apartment building in the crowded unmarked police van, one or more Defendant POLICE OFFICERS proceeded to aimlessly drive the crowded unmarked police van around the block.

111.     One or more Defendant POLICE OFFICERS aimlessly drove the crowded unmarked police van around the block approximately four (4) times.

112.     After one or more Defendant POLICE OFFICERS aimlessly drove the crowded unmarked police van around the block approximately four (4) times, one or more Defendant  POLICE OFFICERS instructed Plaintiff STACEY BENNETT to exit the crowded unmarked police van.

113.     Once outside the crowded unmarked police van, one or more Defendant POLICE OFFICERS stated in sum and substance, "Listen, you won this time."

114.     Once outside the crowded unmarked police van, one or more Defendant "POLICE OFFICERS stated in sum and substance, "Listen, we are going to be watching you, we have a stack of papers on you and we get calls about you day and night."

115.     The intimidating and threatening statement by one or more Defendant POLICE OFFICERS that "We are going to be watching you, we have a stack of papers on you and we get calls about you day and night," caused Plaintiff STACEY BENNETT extreme terror and anguish.

116.     Plaintiff STACEY BENNETT suffered terror, humiliation, and mental anguish as a result of the intimidating and threatening statement by one or more Defendant "POLICE

OFFICERS that "We have a stack of papers on you and we get calls about you day and night."

117.     Acknowledging that Plaintiffs STACEY BENNETT and MOSHA BENNETT, and their boyfriends, were not in possession of any illegal narcotics or other illegal substances and were not exhibiting any suspicious behavior or engaging in any illegal acts, one or more Defendant POLICE OFFICERS released Plaintiffs STACEY BENNETT and MOSHA BENNETT and their respective boyfriends from police custody without filing charges.

118.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff STACEY BENNETT did not have any warrants outstanding for her arrest.

119.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff MOSHA BENNETT did not have any warrants outstanding for her arrest.

120.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff STACEY BENNETT'S and MOSHA BENNETT'S boyfriends did not have any warrants outstanding for their arrests.

121.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff STACEY BENNETT was not carrying any weapons of any sort.

122.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff MOSHA BENNETT was not carrying any weapons of any sort.

123.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends were not carrying any weapons of any sort.

124.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff STACEY BENNETT was not carrying any illegal substances.

125.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff MOSHA BENNETT was not carrying any illegal substances.

126.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends were not carrying any illegal substances.

127.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff STACEY BENNETT was not engaged in any illegal activities of any kind.

128.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiff MOSHA BENNETT was not engaged in any illegal activities of any kind.

129.     At the time of the June 9, 2011 Bronx, New York incident, Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S boyfriends were not engaged in any illegal activities of any kind.

130.     On information and belief, it is common practice among NYPD officers to arrest people in the absence of probable cause to vindicate officers who perceive that they

have been disrespected by civilians, even when officers possess no actual belief a crime is being committed.

131.    This practice has been referred to as "contempt of cop" arrests.

132.    On information and belief, Plaintiffs were subject to "contempt of cop" arrests.

133.    The particular arrests of Plaintiffs are believed to have been motivated in whole or in part by the practice of "contempt of cop" arrests because the Plaintiffs were arrested and detained following an unjustified and brutal search of their home that produced no contraband, and then released, while Defendant POLICE OFFICERS made threatening and abusive statements throughout which seem to indicate a perception of disrespect from Plaintiffs.

134.    On information and belief, it is common practice among NYPD officers to arrest people in the absence of probable cause to justify uses of force against those persons and their property, even when officers possess no actual belief a crime is being committed.

135.    On information and belief, Plaintiffs were arrested to justify the uses of force against them and their property.

136.    The particular arrests of Plaintiffs are believed to have been motivated in whole or in part by the practice of arresting persons without probable cause to justify uses of force because the Plaintiffs were arrested and detained following an unjustified and brutal search of their home that produced no contraband, and then released, with no apparent justification for the arrest and detention of Plaintiffs.

137.    On information and belief, the arrests of Plaintiffs were motivated wholly by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK.

138.    Upon information and belief, the arrests of Plaintiffs were motivated in part by the Defendant POLICE OFFICERS' need to meet quantitative enforcement "productivity goals" promulgated by Defendant CITY OF NEW YORK, and/or the policymakers and supervisory staff of Defendant CITY OF NEW YORK's police department.

139.    The particular arrests of Plaintiffs STACEY BENNETT and MOSHA BENNETT are believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in the absence of probable cause to arrest.

140.    The particular arrests of Plaintiffs STACEY BENNETT and MOSHA BENNETT are believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual Defendant POLICE OFFICERS who participated in Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S arrests made the determination to arrest Plaintiffs STACEY BENNETT and MOSHA BENNETT before determining why Plaintiffs STACEY BENNETT and MOSHA BENNETT should be arrested.

141.     The particular arrests of Plaintiffs STACEY BENNETT and MOSHA BENNETT are believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because the Defendant POLICE OFFICERS arrested Plaintiffs STACEY BENNETT and MOSHA BENNETT after it was already established that Plaintiffs STACEY BENNETT and MOSHA BENNETT were not carrying any weapons or illegal substances, did not have any outstanding warrants against them, were not engaged in illegal conduct of any kind just before the time of their arrest, but after Plaintiffs STACEY BENNETT and MOSHA BENNETT had been seized and assaulted by the Defendant POLICE OFFICERS.

142.     Further information regarding the above-referred customs, policies and practices are contained in the appendix annexed to the initial complaint in this case and incorporated by reference herein, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

143.     As a result of the above constitutionally impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT were caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to their reputations and standing within their community.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

144.     Plaintiffs STACEY BENNETT and MOSHA BENNETT repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

145.     All of the aforementioned acts of the Defendant CITY, and the Defendant POLICE OFFICERS, their agents, servants and employees, were carried out under the color of state law.

146.     All of the aforementioned acts deprived Plaintiffs STACEY BENNETT and MOSHA BENNETT of their rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

147.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

148.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

149.     The Defendant POLICE OFFICERS and the Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

150.     Further information regarding the existence of the aforesaid constitutionally-violative customs, policies and practices of Defendant CITY OF NEW YORK and its police officers, as well as of Defendant CITY OF NEW YORK'S knowledge of same and Defendant CITY OF NEW YORK'S failures to address same are set forth in the appendix to this complaint.

151.     As a result of the above constitutionally impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT were caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to their reputations and standing within their community.

152.     As a result of Defendants' impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT demand judgment against Defendants in a sum of money to be determined at trial.

### SECOND CLAIM FOR RELIEF
### FALSE ARREST UNDER 42 U.S.C. § 1983

153.     Plaintiffs STACEY BENNETT and MOSHA BENNETT repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

154.     As a result of the aforesaid conduct by Defendants, Plaintiffs STACEY BENNETT and MOSHA BENNETT were subjected to an illegal, improper and false arrest by the Defendant POLICE OFFICERS, and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

155.     As a result of the above constitutionally impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT were caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to

property, loss of wages, legal expenses, and damage to their reputations and standing within their community.

156.     As a result of Defendants' impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT demand judgment against Defendants in a sum of money to be determined at trial.


### THIRD CLAIM FOR RELIEF
### EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

157.     Plaintiffs STACEY BENNETT and MOSHA BENNETT repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

158.     One or more Defendant POLICE OFFICERS assaulted Plaintiffs STACEY BENNETT and MOSHA BENNETT in the absence of need for such action and force.

159.     One or more Defendant POLICE OFFICERS subjected Plaintiffs STACEY BENNETT and MOSHA BENNETT to several physically aggressive maneuvers without Defendants identifying a requisite need for such action and force.

160.     The level of force employed by one or more Defendant POLICE OFFICERS against Plaintiffs STACEY BENNETT and MOSHA BENNETT was objectively unreasonable.

161.     The force employed by one or more Defendant POLICE OFFICERS against Plaintiffs STACEY and MOSHA BENNETT did not advance any proper government objective.

162.     As a result of the aforementioned conduct of defendants, Plaintiffs STACEY BENNETT and MOSHA BENNETT were subjected to excessive force.

163.     As a result of the above constitutionally impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT were caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to their reputations and standing within their community.

164.     As a result of Defendants' impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT demand judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## <u>FAILURE TO INTERVENE UNDER 42 U.S.C. §1983</u>

165.   Plaintiffs STACEY BENNETT and MOSHA BENNETT repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

166.   The Defendant POLICE OFFICERS and the Defendant CITY OF NEW YORK had an affirmative duty to intervene on Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S behalf to prevent the above-referred violations of their constitutional rights.

167.   The individual Defendant POLICE OFFICERS failed to intervene on Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S behalf to prevent the violation of their constitutional rights despite having had realistic opportunities to do so.

168.   The individual Defendant POLICE OFFICERS failed to intervene on Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S behalf to prevent the violation of their constitutional rights, despite having substantially contributed to the circumstances within which Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S rights were violated by their affirmative conduct.

169.   As a result of the aforementioned conduct of the individual defendants, Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S constitutional rights were violated.

170.   As a result of the above constitutionally impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT were caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to their reputations and standing within their community.

171.   As a result of Defendants' impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT demand judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER *MONELL*

172.     Plaintiffs STACEY BENNETT and MOSHA BENNETT repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

173.     Plaintiffs also incorporate herein by reference the contents of the appendix attached to the initial complaint in this case, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

174.     Defendants used excessive force on Plaintiffs STACEY BENNETT and MOSHA BENNETT in the absence of any evidence of criminal wrongdoing or other justification for the use of such force, notwithstanding their knowledge that said uses of force were unreasonable, unjustified, and would jeopardize Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S liberty, well-being, safety and constitutional rights.

175.     Defendants arrested Plaintiffs STACEY BENNETT and MOSHA BENNETT in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S liberty, well-being, safety and constitutional rights.

176.     The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

177.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

178.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

   a. the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with civilians generally;
   b. the continuing practice or custom of New York City Police Officers utilizing disproportionate force in a punitive, retaliatory or otherwise wrongful manner in interactions with minorities;
   c. the continuing practice or custom of New York City Police Officers wrongfully arresting individuals without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons;

18

d. the continuing practice or custom of New York City Police Officers wrongfully arresting minority individuals without conducting investigations sufficient to ascertain whether there is probable cause to arrest said persons;

g. the continuing practice of failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the excessive use of force or in warrantless or otherwise unconstitutional arrests or otherwise impermissible violations of individuals' constitutional rights, particularly with respect to officers who are repeatedly accused of such acts;

h. the custom or practice of members of the New York City Police Department known as the "Blue Wall of Silence," wherein members of the New York City Police Department intentionally and willfully fail to cooperate with investigations into the misconduct or corrupt activities of their fellow officers, a practice which leads New York City Police Officers to regularly condone and cover up police abuse of power by telling false and incomplete stories.

179.    The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department evince deliberate indifference to the safety, well-being, and constitutional rights of Plaintiffs STACEY BENNETT and MOSHA BENNETT.

180.    As a result of the above constitutionally impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT were caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss or property, damage to property, loss of wages, legal expenses, and damage to their reputations and standing within their community.

181.    As a result of Defendants' impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT demand judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## EQUAL PROTECTION UNDER 42 U.S.C. § 1983

182.    Plaintiffs STACEY BENNETT and MOSHA BENNETT repeat, reiterate and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

183.    Plaintiffs also incorporates herein by reference the contents of the appendix attached to the initial complaint in this case, "ADDITIONAL FACT PLEADINGS IN SUPPORT OF MONELL CLAIMS."

184.    At all times described herein, Plaintiffs STACEY BENNETT and MOSHA BENNETT were possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

185.    One or more Defendant POLICE OFFICERS arrested Plaintiffs STACEY BENNETT and MOSHA BENNETT in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiffs' liberty, well-being, safety and constitutional rights.

186.    The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

187.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

188.    Plaintiffs STACEY BENNETT and MOSHA BENNETT were taken into Police custody and detained against their wills.

189.    That the actions of Defendant POLICE OFFICERS heretofore described, constituted unlawful detention, imprisonment, assault and battery and malicious prosecution and were designed to and did cause specific bodily harm, pain and suffering both in violation of Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York.

190.    The Defendant POLICE OFFICERS, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

191.    As a result of the aforementioned conduct, the Defendants POLICE OFFICERS have violated Plaintiffs STACEY BENNETT'S and MOSHA BENNETT'S constitutional rights to equal protection, and Plaintiffs STACEY BENNETT and MOSHA BENNETT are entitled to seek redress under 42 U.S.C. §1983, and are further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

192.    The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiffs STACEY BENNETT and MOSHA BENNETT as alleged herein.

193.    The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiffs STACEY BENNETT and MOSHA BENNETT as alleged herein.

194.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiffs STACEY BENNETT and MOSHA BENNETT were subjected to excessive force, false arrest, and excessive and unnecessary detention.

195.     As a result of the above constitutionally impermissible conduct, Plaintiffs STACEY BENNETT and MOSHA BENNETT were caused to suffer, *inter alia*, personal injuries, violations of their civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, legal expenses, and damage to their reputations and standing within his community.

196.     As a result of the foregoing, Plaintiffs STACEY BENNETT and MOSHA BENNETT demand judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

I.    Invoke pendent party and pendent claim jurisdiction.

II.   Award appropriate compensatory and punitive damages.

III.  Award appropriate declaratory and injunctive relief.

IV.   Empanel a jury.

V.    Award attorney's fees and costs.

VI.   Award such other and further relief as the Court deems to be in the interest of justice.

DATED:  New York, New York
        September 12, 2013

Respectfully submitted,

_____~//s//~_____
SAMUEL B. COHEN [SC 0622]
STECKLOW COHEN & THOMPSON
10 SPRING ST, SUITE 1
NEW YORK, NY 10012
[212] 566-8000
[212] 202-4952/FAX
ATTORNEYS FOR PLAINTIFFS